UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| zuMedia Inc., <br><br>         Plaintiff, Counter-Defendant, <br><br> v. <br><br> IMDb.com, Inc., <br><br>         Defendant, Counter-Plaintiff. | Case No. 1:23-CV-08472-VSB-SLC <br><br> **ELECTRONICALLY STORED INFORMATION PLAN AND ORDER** |

The parties in this action stipulate and agree that the following Electronically Stored Information ("ESI") Plan and Order shall govern the preservation, collection and production of electronically stored information and documents in this action.

**1.    Brief Joint Statement Describing the Action**

Plaintiff zuMedia Inc. ("Plaintiff" or "zuMedia") seeks a declaratory judgement of non-infringement of Defendant's IMDB trademarks because zuMedia's DMDB trademarks, when used in connection with zuMedia's services, have not caused and are not likely to cause, confusion among consumers as to source or affiliation. Because the letter string "DB" is a common abbreviation for "database", zuMedia asserts that no party possesses exclusive rights to that acronym particularly when combined with other acronyms for online databases

Defendant IMDb.com, Inc. ("Defendant" or "IMDb") maintains that Plaintiff's declaratory judgment claims lack merit—and that zuMedia is liable for federal trademark infringement and false designation of origin and unfair competition, as well as common law trademark infringement and unfair competition because the DMDb marks are likely to confuse consumers, given the high degree of similarity between the parties' marks and their overlapping goods and services. IMDb further asserts that Defendant's use of the DMDb marks dilutes the quality and power of IMDb's

famous marks and that zuMedia's pending trademark Application Ser. No. 97/540,766 is void pursuant to 15 U.S.C. § 1060(a)(1).

zuMedia seeks declaratory relief and does not seek monetary relief on its claims. IMDb seeks injunctive relief and monetary relief in an amount to be determined at trial and based on further discovery.

**2.     Certification and Meet-and-Confer**

The parties' counsel certify that they are sufficiently knowledgeable in matters relating to their client(s)' technological systems to competently discuss issues relating to electronic discovery, or have involved someone competent to address these issues on their behalf.

The parties also certify that they have met and conferred to discuss the issues in this ESI Order on December 16, 2024, and thereafter via email through March 28, 2025.

**3.     Preservation of ESI**

The parties have discussed the obligation to preserve potentially relevant electronically stored information and agree to the following scope and methods for preservation, including but not limited to: (e.g., retention of electronic data and implementation of a data preservation plan; identification of potentially relevant data; disclosure of the programs and manner in which the data is maintained; identification of computer system(s) utilized; and identification of the individual(s) responsible for data preservation, etc.).

   a.     Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

  b. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

    i. Deleted, slack, fragmented, or other data only accessible by forensics.

    ii. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

    iii. On-line access data such as temporary internet files, history, cache, cookies, and the like.

    iv. Back-up data that are duplicative of data that are more accessible elsewhere.

    v. Server, system or network logs.

    vi. Data remaining from systems no longer in use that is unintelligible on the systems in use.

    vii. Data stored on photocopiers, scanners, and fax machines.

    viii. Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

    ix. Voicemail messages.

    x. Instant messages, such as messages sent on Skype, Jabber, or Teams.

    xi. Text messages and data from app-based messaging systems, including SMS, MMS, iMessages, WhatsApp, Signal, and Line.

    xii. Data in metadata fields that are frequently updated such as last opened date.

**4. Collection**

The parties agree to use forensically sound means of collecting ESI in a manner that preserves relevant metadata. On-site inspection of electronic media shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

**5.   Search and Review**

To reduce the burden of ESI discovery, the parties may meet and confer to identify mutually agreeable search terms and queries, file type and date restrictions, and data sources (including custodians) before any such effort is undertaken and shall continue to cooperate in revising the appropriateness of the search methodology. That a document is captured by a search term does not mean such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation or any required disclosure.  Such determinations shall be made by the producing party. Likewise, the use of search terms will not preclude the parties' use of other reasonable techniques to further identify relevant or irrelevant documents, including, but not limited to, analytics, predictive coding, and other technology assisted review.

For hard copy documents and non-email-related ESI, the parties shall conduct reasonable searches for responsive and relevant documents from custodians, servers, files, and other sources that are reasonably likely to have discoverable information.

For email-related ESI, each party shall be entitled to request that the responding party search email-related ESI for no more than one custodian. Before reviewing emails of a custodian, the parties shall meet and confer to select up to ten search terms or queries per custodian. The requesting party may request unique hit counts for each search query. After selecting the search terms, the responding party shall conduct a reasonable review of the documents hitting on search terms to identify and produce responsive and relevant documents.

The parties agree that, except for documents related to the prosecution and initial use of a relevant mark and except for any other specific need for relevant and responsive ESI, the producing party shall have no obligation to search for documents dated from before 2002.

**6.    Production**

    a.    <u>Form(s) of Production and Metadata</u>. ESI will be produced to the requesting party in a form ready to load to an electronic discovery platform:

1. *TIFFs*. Single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi). Single page TIFF images should be named according to a unique Bates number, followed by the extension ".TIF". Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape).

2. *Text Files*. The full text of each electronic document shall be extracted from the native file ("Extracted Text") and produced with each text file corresponding to a single document in the production. The Extracted Text shall be in ASCII text format (or Unicode text format if the text is in a foreign language) and named with a unique Bates Number (*i.e.* the unique Bates Number of the first page of the document followed by .txt).

3. *Database Load Files/Metadata*. All ESI should be produced with an ASCII delimited data file (.txt, .dat, or .csv) that contains the metadata fields listed in Appendix 1, attached hereto, that can be loaded into a commercially acceptable electronic discovery platform (*e.g.* Relativity). The first line of each delimited data file must contain a header identifying each data field name (i.e., header row). To the extent metadata does not exist, is not reasonably accessible or available for any documents produced, or would be unduly burdensome to provide, nothing in this

       Order shall require any party to extract, capture, collect, or produce such data.

4. *Native Files.* Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, presentation, audio and video, database, and drawing files, will be produced in native format. The parties may elect to utilize native redaction software tools such as "Blackout" to apply redactions directly to a native spreadsheet and produce a redacted native file instead of a TIFF image of a spreadsheet. If a document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the document has been produced in native format should also be provided. Each native file should be named for its Bates number with its original file extension, and should be linked directly to its corresponding record in the load file using the NativeFileLink field.

5. *Cross-Reference Image File Registration.* All ESI should be produced with an image load file (.opt) linking each page in the production to a single document record. Each TIFF in a production must be referenced in the corresponding image load file. An exemplar load file format is below.

    ABC0000001,PROD001,\\IMAGES\001\ABC0000001.tif,Y,,,2

    ABC0000002,PROD001,\\IMAGES\001\ABC0000002.tif,,,,

    ABC0000003,PROD001,\\IMAGES\001\ABC0000003.tif,Y,,,1

b. <u>Bates Numbering</u>. All images must be assigned a unique and sequential Bates number with a prefix denoting the producing party followed by 7 digits.

    c.    <u>Redactions</u>. The parties agree that documents redacted for privilege or other good reason will be produced without native files, full text and/or OCR, and metadata values including but not limited to SUBJECT, FULLPATH AND FILENAME. The redaction language should clearly indicate the basis for the redaction [Redacted, Redacted-Privileged, Redacted-PII, etc.] and the REDACTED field in the production load file field should be populated to indicate the document contains a redaction.

    d.    <u>Other Documents or Data</u>. Before any party produces certain structured or other electronic data that is not easily converted to static TIFF images, such as databases, CAD drawings, GIS data, videos, websites, social media, etc., the parties will meet and confer to discuss the appropriate format for the production.

    e.    <u>De-duplication</u>. The parties shall de-duplicate their ESI across custodial and non-custodial data sources at the document family level, based on MD5 or SHA-1 hash values. Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. Custodian information removed during the de-duplication process should be tracked in the OTHER_CUSTODIAN field in the database load file.

    f.    <u>Email Threading</u>. The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy of each email thread and its related family members. The parties must maintain all parent-child relationships, i.e., if a lesser inclusive email has attachments not attached to the more inclusive email, the lesser inclusive email and attachments must be produced in their entirety. The parties may choose to exclude otherwise lesser inclusive copies from

production. Upon reasonable request, the producing party will produce any less inclusive copies excluded from production.

g.  <u>Parent-Child Document Relationships</u>. The parties agree to produce complete document families (i.e. an email and its attachments) in the same production set, with the parent-child relationship captured in the production bates attach begin and production bates attach end fields in the database load file. Full document families will be produced even if a single part of the family, taken out of the family context, may be non-responsive. Parties may withhold privileged documents from otherwise responsive document families by producing a single-page Bates-stamped TIFF image placeholder stating the document has been withheld for privilege.

h.  <u>Time Zone</u>. The parties agree that the entirety of each party's ESI should be processed using a single zone, identified as a fielded value in the production database load file.

i.  <u>Hard Copy Documents</u>. All hard copy or printed materials will be scanned by the producing party and produced in electronic form. The printed materials shall be converted to single-page TIFF images, stamped with Bates numbers, and produced following the same protocol set forth herein or otherwise agreed to by the Parties: (i) images of all file labels, file headings, and file folders associated with any hard copy document will be produced with the images of the hard copy documents; (ii) document breaks for paper documents shall be based on Logical Document Determination (or "LDD") or as they were kept in the ordinary course of business; (iii) searchable ASCII text files (or Unicode text format if the text is in a foreign language); and (iv) a database load file including the following fields: BEGBATES,

ENDBATES, BEGATTACH, ENDATTACH, CUSTODIAN, CONFIDENTIALITY, REDACTED, and CDVOLUME. If an original document contains relevant information in color that is necessary to understand the meaning or content of the document, the document should be produced as single-page, 300 DPI with a minimum quality level of 75, 24-bit, color JPG images.

7. **Third Party Documents.**

   a. A party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Stipulation with the subpoena request that third parties produce documents in accordance with the specifications set forth herein. The Issuing Party shall produce any documents obtained pursuant to a non-party subpoena to the opposing party. If the non-Party production is not Bates-stamped, the Issuing Party will brand the non-Party production images with unique prefixes and Bates numbers prior to producing them to the opposing Party per the technical specifications outlined in this Stipulation.

   b. Nothing in this Stipulation is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or Third Parties to object to a subpoena.

8. **Privilege**

   a. <u>Non-Waiver</u>. Pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding shall not, for the purposes of this or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product

171131476.v1

protection, or any other privilege or protection recognized by law. This Order shall be interpreted to provide the maximum protection allowed by Fed. R. Evid. 502(d).

b. <u>Clawback</u>. The producing party may seek the return and/or destruction of any document produced in response to discovery requests in this action that the party later claims should have been withheld on grounds of a privilege ("Protected Information"). A party may request the return of such a document by promptly notifying the receiving party, identifying the document by Bates number, and stating the basis for withholding such document from production. The receiving party must promptly return, sequester or destroy (or in the case of ESI, delete) the Protected Information and any reasonably accessible copies it has and provide a certification that it will cease further review, dissemination, and use of the Protected Information. Notwithstanding the forgoing, the receiving party may contest the privilege claim by seeking an Order compelling disclosure of the information claimed as unprotected (a "Disclosure Motion"). The Disclosure Motion must be filed under seal and must not assert as a ground for compelling disclosure the fact or circumstances of the disclosure. Pending resolution of the Disclosure Motion, the receiving party must not use the challenged information in any way or disclose it to any person other than those required by law to be served with a copy of the sealed Disclosure Motion.

c. <u>Privilege Logs</u>. A producing party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order. Privilege logs shall include a unique identification number for each document and the privilege basis for the claim.

10

For ESI, the privilege log may be generated using available metadata, including author for loose documents and attachments or to/from/cc/bcc names for email; the filename or email subject; and date created or date sent. Should the receiving party reasonably believe that the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the receiving party may request that the producing party include additional information for specifically identified privilege log entries. Privilege logs will be produced to all other parties no later than 30 days before the deadline for filing motions related to discovery unless an earlier deadline, in whole or in part, is agreed to by the parties. Redacted documents need not be logged so long as the basis for the redaction is clear on the face of the document. With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

| ATTORNEYS FOR PLAINTIFF: | ATTORNEYS FOR DEFENDANT: |
|---|---|
| .s/ *Nels T. Lippert*<br>Nels T. Lippert<br>**TARTER KRINSKY & DROGIN LLP**<br>1350 Broadway<br>New York, NY 10018<br>Tel: (212) 216-8000<br>nlippert@tarterkrinsky.com | s/ *John H. Gray*<br>John H. Gray<br>**PERKINS COIE LLP**<br>2525 E. Camelback Road<br>Phoenix, AZ 85016-4227<br>Tel: (602) 648-7054<br>jhgray@perkinscoie.com |

SO ORDERED.    April 2, 2025

SARAH L. CAVE
United States Magistrate Judge

# Appendix 1: Metadata and Coding Fields

The parties agree to produce a database load file with following metadata and coding fields in the order below. The parties agree that all fields with an asterisk* do not need to be produced for documents redacted for privilege.

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Individual from whom the documents originated |
| DOCTYPE | Description of document (Email, Attachment, Edoc, Hard Copy) |
| EXTENSION | Characters of the filename indicating the relevant program used to open the file (file extension) |
| FULLPATH* | The directory structure of the original file(s). Any container name is included in the path. |
| HASHVALUE | The MD5 or SHA-1 hash value. |
| NATIVELINK | Native file link for agreed upon native files, if applicable (for example Excel files) |
| TEXTLINK | Text file link for extracted text files. |
| SUBJECT* | Subject line of email |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| TIMESENT | Time email was sent |
| PARENT_DATE | The date of the parent email should be applied to the parent email and all of the email attachments. |
| TO | All recipients that were included on the "To" line of the email |
| FROM | The name and email address of the sender of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| AUTHOR | Any value populated in the Author field of the document properties |
| FILENAME* | Filename of an electronic document, loose files and attachments to email. |
| DATEMOD | Date an electronic document was last modified (format: MM/DD/YYYY) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) |
| REDACTED | Yes should be populated if a document contains a redaction. |
| CONFIDENTIALITY | The confidential designation should be populated. |
| CDVOL | The Production CD volume name. |
| TIMEZONE | Three letter reference to reflect time zone that data was processed in, as agreed between parties |